EXHIBIT "T"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

JONG HYON KIM,

                         Plaintiff,

     - against -

WISE COACHES, INC. and TERRY SWANN,

                      Defendants.

-----------------------------------------------------------------x

Civil Action No.:
16-CV-1980

**FRCP RULE 26 EXPERT
DISCLOSURE OF DR.
ANDREW N. BAZOS**

     **PLEASE TAKE NOTICE** that Defendants/Third Party Plaintiffs WISE COACHES, INC. and TERRY SWANN (hereinafter "Defendants") by their attorneys, GALLO VITUCCI KLAR, LLP, provide the following disclosure of the medical expert who will testify on Defendants behalf at the trial:

     1.     Curriculum Vitae of Dr. Andrew N. Bazos is annexed hereto as **Exhibit "A."**

     2.     Dr. Bazos' report concerning his examination of the plaintiff is annexed hereto as **Exhibit "B."**

     3.     In accordance with Rule 26 of the Federal Rules of Civil Procedure, Dr. Bazos' report contains a complete statement of the opinions he will express and the basis and reasons therefore; the facts or data considered by the witness in forming them, to wit, litigation materials; medical records; discussions with the plaintiff; and the results of his physical examination of the plaintiff. Dr. Bazos will also provide his expert opinions regarding proof admitted at trial prior to his appearance.

     4.     Dr. Bazos has not authored any publications in the last 10 years.

5.    Dr Bazos testified in the following cases in the past 4 years: Blancato v.

Madden Superior Court, New Haven al (2016); Artis v. Neisser, Connecticut Superior Court 2013;

Sulliovan v. Metro North Railroad  2007

6.    Compensation to be paid for the examination and for appearance at trial is as follows:
- Independent Medical Exam- $1,000.00  - $3,000

- Preparation and verbal discussions-   $550/hr

- After hours' deposition (minimum two hours)- $1000/hr

- Trial testimony-$5500/half day

Defendants reserve the right to supplement this report prior to trial.

Dated: New York, New York
       June 23, 2017

Respectfully submitted,

GALLO VITUCCI KLAR LLP

BY:

Bryan Schwartz
*Attorneys for Defendants*
90 Broad Street, 3rd Floor
New York, New York 10004
(212) 683-7100
Our File No.: NI 2015-7

TO:

ROBERT ALAN SAASTO ESQ.
*Attorneys for Plaintiff*
JONG HYON KIM
41 Eagle Chase
Woodbury NY 11797
631 223 1780

EXHIBIT "A"

**CURRICULUM VITAE**  (updated 11/2/16)

# ANDREW N. BAZOS, M.D.

*Western Connecticut Orthopedic Specialists, P.C.*      *Sports & Entertainment Physicians, PC*
131 Kent Road                                           244 West 54th St.—3rd floor
New Milford, CT 06776                                   New York, NY 10019
Office:  (860)-355-8000                                 Office:  (212)-262-9282
Fax:     (860)-350-6291                                 Fax:     (212)-262-9178


**Date/Place of Birth:**                                June 7, 1962,  Springfield, MA


**Education:**

Longmeadow High School, Longmeadow, MA          1976-1980, valedictorian
Harvard University, Cambridge, MA               1980-1983, A.B., cum laude
Yale University School of Medicine, New Haven, CT   1983-1987, M.D.


**Post-Graduate Training:**

Internship, General Surgery, *Columbia-Presbyterian Medical Center*
                  New York, NY                 July 1987-June 1988
Resident, Orthopedic Surgery, *New York Orthopedic Hospital at Columbia-Presbyterian
          Medical Center*
                  New York, NY                 July 1988-June 1991
Senior Resident and Junior Anne C. Kane Fellow, *New York Orthopedic Hospital at
          Columbia Presbyterian Medical Center*
                  New York, NY                 July 1991-March 1992
Senior Resident in Pediatric Orthopedics, *Shriner's Hospital for Crippled Children*
                  Springfield, MA              April 1992-June 1992.
Fellow, Sports Medicine and Arthroscopy, *NYU-Hospital for Joint Diseases*
                  New York, NY                 August 1992-August 1993


**Current Positions/Appointments:**

Clinical Assistant Professor, Department of Sports Medicine, *NYU-Hospital for Joint Diseases*
                  New York, NY                 September 1994-present
Department of Surgery, *New Milford Hospital,* orthopedic surgeon
                  New Milford, CT              January 1994-present
Department of Surgery, *Sharon Hospital,* orthopedic surgeon
                  Sharon, CT                   January 2000-present
Orthopedic surgeon, *New Milford Orthopedic Associates, P.C.*
                  New Milford, CT              January 1994-present
Director, *Sports & Entertainment Physicians, P.C.*
                  New York, NY                 April 1989-present

**Licenses:**          State of New York          176339
                       State of Connecticut       033406
                       State of Massachusetts     227429


**Board Certification:**   American Board of Orthopedic Surgery, 1995
                           Re-certification 2005
                           Re-certification 2015


**Professional Societies:**

Diplomate, American Academy of Orthopedic Surgeons
Hellenic Medical Society
American College of Sports Medicine
Connecticut State Medical Society
Litchfield County Medical Society


**Honors:**

National Merit Scholar, 1980
John Harvard Scholarship for High Academic Distinction, 1982 and 1983
AHEPA Cooley's Anemia Research Fellowship, 1983
Paul D'Amour Graduate Fellowship for excellence in a graduate school, 1986
Yale University Research Fellowship, 1986
Arthur E. Baue Honorary Surgical Society, 1986
Honors thesis, Yale University School of Medicine, 1987
Top doctors in CT--Sports Medicine, Connecticut Magazine, February, 2001


**Appointments:**

| | |
|---|---|
| Medical Director, *Madison Square Garden*<br>   New York, NY | 1990-present |
| House physician, *Yankee Stadium*<br>   Bronx, NY | 1988-96; 2008-present |
| Tournament Physician, *Big East Basketball Tournament*<br>   New York, NY | 2002-present |
| Medical Director, *CrowdRx*, Inc.<br>   New York, NY | 1991-present |
| Spectator/Staff Medical Director, *U.S. Tennis Open*<br>   Flushing Meadows, NY | 2010-present |
| Director, Medical and Safety Committee, SFX Entertainment<br>   New York, NY | 2012-present |
| Tournament Physician, NCAA Basketball Men's Regionals<br>   New York, NY | March 2014 |
| Physician, *Hunter Mountain Ski Facility*<br>   Hunter Mountain, NY | 1990-1992 |

| | |
|---|---|
| Sports Fellow, *U.S. Open Tennis Tournament* Flushing Meadows, NY | 1992 |
| Consultant, *Metropolitan Athletics Congress* New York, NY | 1991-1995 |
| Orthopedic consultant, *New York Marathon* New York, NY | 1992-1994 |
| Team Physician, *City College of New York* New York, NY | 1992-1993 |

**Presentations:**

Grelsamer, R.P., Bazos, A.N., Proctor, C.S.: A Study of Patellar Morphology in the Sagittal Plane with Clinical Correlation.
*65e Réunion Annuelle, Société Française de Chirurgie Orthopédique et Traumatologique*
Paris, France                                        November, 1990

Bazos, A.N., Proctor, C.S., Grelsamer, R.P.: A Sensitive and Simple Radiographic Measurement of Patellar Tilt.
*The 58th Annual Meeting of the American Academy of Orthopedic Surgeons*
Anaheim, California                                  March, 1991

Stull, P.A., Bazos, A.N., Bullek, D.D., Rosenwasser, M.P.: Early Results of Wrist Arthroscopy.
*The 24th Annual American Orthopedic Association Residents' Conference*
Kansas City, Kansas                                  April, 1991

Bazos, A.N., Proctor, C.S., Grelsamer, R.P.: Roentgenographic Analysis of Patellar Tilt.
*The Combined Congress of the International Arthroscopy Association and the International Society of the Knee*
Toronto, Canada                                      May, 1991

Bazos, A.N., Proctor, C.S., Grelsamer, R.P.: Analyse Radiographique de la Bascule Rotulienne.
*France/Greece Spring Orthopedic Meeting*
Salonika, Greece                                     June, 1991

**Scientific Exhibits:**

Bazos, A.N., Proctor, C.S., Grelsamer, R.P.: Roentgenographic Analysis of Patellar Tilt in Athletes.
*The American Orthopedic Society for Sports Medicine and The Japanese Orthopedic Society for Sports Medicine Trans-Pacific Meeting*
Kauai, Hawaii                                        January, 1991

Bazos, A.N., Proctor, C.S., Grelsamer, R.P.: Plain Radiographic Analysis of Patellar Tilt.
*59th Annual Meeting of the American Academy of Orthopedic Surgeons*
Washington, D.C.                                     February, 1992

**Publications:**

Greisamer, R.P., Bazos, A.N., Proctor, C.S.: Radiographic Measurement of Patellar Tilt.
    *British Journal of Bone and Joint Surgery*        December, 1993

Greisamer, R.P., Bazos, A.N., Proctor, C.S.: Patellar Pathology in the Sagittal Plane.
    *American Journal of Sports Medicine*        February, 1994

**Patents:**

Bazos, A.N., Proctor, C.S.: A Thumb Ulnar Collateral Ligament-Sparing Ski Pole Grip
    *U.S. Patent #5,121,943*        June, 1992

EXHIBIT "B"

## _Sports & Entertainment Physicians, P.C._

### Andrew N. Bazos, M.D.
**Diplomate, American Board of Orthopedic Surgery**

April 14, 2017

Bryan T. Schwartz, Esq.
Gallo Vitucci & Klar, LLP
90 Broad Street
New York, NY 10004

**CLAIMANT:**                              Jong Hyon Kim

### INDEPENDENT MEDICAL RECORD REVIEW and EXAMINATION

Dear Attorney Schwartz:

**PURPOSE:**

At your request, I performed an independent medical record review and examination regarding the claimant, Jong Hyon Kim, and injuries he allegedly sustained as a result of a motor vehicle accident which occurred on August 8, 2015.

**REVIEW OF MEDICAL RECORDS:** In forming my opinions, I relied upon the following medical records:

1. Bills.
2. Post-deposition demand.
3. Plaintiff's supplemental.
4. Plaintiff's second supplemental.
5. Plaintiff's third supplemental.
6. Plaintiff's fourth supplemental.
7. Verified Bill of Particulars.
8. Notes from Dr. David Adin, of New York Spine and Pain Care dated June 23, 2016 to October 20, 2016.
9. Surgical report from Dr. Sebastian Lattuga for surgery performed on the cervical spine at NYP-Lower Manhattan on January 26, 2017.
10. Note from Dr. Sebastian Lattuga of New York Spine Specialists dated January 16, 2017.
11. Operative report for right shoulder surgery performed by Dr. Thomas Scilaris at Health East Ambulatory Surgical Center on September 15, 2016.

RE:   Jong Hyon Kim
      April 14, 2017
      Page 2

12. Notes from Dr. Thomas Scilaris, of Parkwest Medical Group dated July 26, 2016.
13. Physical therapy progress notes from You & Woon Physical Therapy, P.C. dated August 10, 2015 to December 3, 2016.
14. Cervical and lumbar inclinometry reports performed by Dr. Jaeho Shin, chiropractor, dated October 10, 2015.
15. Notes from Dr. Jaeho Shin of Jaeho Shin Chiropractic, P.C. dated August 10, 2015 to December 7, 2015.
16. Notes from Shin Acupuncture, P.C. dated August 10, 2015 to December 3, 2015.
17. Deposition of Jong Hyon Kim.
18. Cervical discography performed at C3-C4 through C6-C7 by Dr. David Adin on November 2, 2016 at Health East Ambulatory Surgical Center.

**HISTORY:**

On August 10, 2015, the 60-year-old claimant went to Dr. Jaeho Shin of Jaeho Shin Chiropractic, P.C. with complaints of neck, upper back, low back, and right shoulder pain.  The neck and low back pain radiated into the upper and lower extremities.  He was the restrained driver of a vehicle that was allegedly rear-ended.  He did not go to the hospital after the accident.  Range-of-motion of the cervical, thoracic, and lumbar spine was limited and painful in flexion, extension, and right rotation.   Motor examination demonstrated weakness in the right deltoid, biceps, and gastrocnemius muscles graded as 4/5.  Deep tendon reflexes were hypoactive in the left C6 and right S1 distribution.  Shoulder depression test and Jackson's compression test were positive on the right.   O'Donoghue's maneuver was positive bilaterally.  Cervical distraction test, brachial stress test, and thoracic spinal percussion test were negative.   Schepelmann's test and Kemp's test were positive bilaterally.  Straight leg raising test and Hibb's test were positive on the left.  Goldthwait's test, Yeoman's test, Minor's test, and heel and toe walking test were negative.  Supraspinatus test was positive on the right.  Dugas' test was negative.  Hypertonicity and tender points were noted in the suboccipital, upper trapezius, levator scapulae, supraspinatus, erector spinae, quadratus lumborum, gluteus medius, and piriformis muscles.  Gait examination was normal.  Restrictions were noted in the cervical, thoracic, and lumbar spine. Diagnoses consisted of cervical, thoracic, and lumbar joint dysfunction, and cervical, thoracic, and lumbar sprain/strain.  Treatment consisted of chiropractic manipulative therapy and physical therapy modalities.  The claimant was treated until December 7, 2015 with no resolution of symptoms.

On August 10, 2015, the claimant started physical therapy at You & Woon Physical Therapy.   Treatment continued until December 3, 2016 with no resolution of symptoms.

RE:   Jong Hyon Kim
       April 14, 2017
       Page 3

On June 23, 2016, the claimant saw Dr. David Adin, of New York Spine and Pain Care, for bilateral neck pain that radiated into the left arm along the posterior medial aspect down to the forearm associated with numbness and tingling in the left hand.   He also suffered from low back pain which was mostly axial in distribution.   Range-of-motion of the cervical spine was limited.   Spurling's maneuver was positive on the left.   Tenderness was noted in the cervical paraspinal and periscapular muscles.   Oblique extension to the neck bilaterally produced concordant axial distribution of pain.   Range-of-motion of the lumbar spine was limited.   Tenderness was noted in the lumbar paraspinal muscles and interspinous region predominately at the L4-L5 and L5-S1 levels.   Kemp's test was positive bilaterally.   Sitting root test reproduced the claimant's low back pain in a concordant distribution.   Deep tendon reflexes and sensory examination were intact.   Weakness was noted in the left biceps and wrist extensors graded as 5-/5.   Review of MRI films dated September 22, 2015 and February 27, 2016 of the cervical and lumbar spine demonstrated no significant change in findings. The MRI of the cervical spine demonstrated disc bulging at C3-C4 with mild endplate changes, C4-C5 disc herniation with endplate changes with marginal osteophyte and bilateral neuroforaminal narrowing, C5-C6 disc herniation with bilateral neuroforaminal narrowing and spinal stenosis, and a left paracentral disc herniation at C6-C7.   MRI of the lumbar spine demonstrated a right paracentral disc herniation at L2-L3 with annular tear and narrowing of the right neural foramen, disc bulging at L3-L4 with bilateral neuroforaminal narrowing, disc bulge at L4-L5 with bilateral neuroforaminal narrowing, and mild disc bulge at L5-S1 with bilateral neuroforaminal narrowing.     Diagnoses consisted of discogenic neck and low back pain with cervical radiculopathy and cervical and lumbar traumatic facet syndrome.   Dr. Adin recommended a cervical discography and surgical intervention to the cervical spine.

On July 26, 2016, the claimant saw Dr. Thomas Scilaris, of Parkwest Medical Group, for neck, mid back, and right shoulder pain.   An MRI of the right shoulder dated September 15, 2015 demonstrated joint effusion, swelling along the acromioclavicular joint with impingement of the joint capsule, and increased signal along the biceps tendon consistent with tenosynovitis.   Examination of the right shoulder demonstrated decreased range-of-motion in flexion and abduction with marked apprehension.   Tenderness was noted over the bicipital groove. O'Brien's test was positive.   Rotator cuff strength was graded as 4+/5 with an audible click in the right shoulder with range-of-motion.   Tenderness was noted over the acromioclavicular joint with cross-arm reduction being negative. Diagnoses consisted of status post motor vehicle accident on August 8, 2015 and bicipital tenosynovitis with clinical labral tear and partial rotator cuff tear with secondary impingement.   A cortisone injection was discussed, but it was not stated whether or not it was performed.   Dr. Scilaris recommended arthroscopic

RE:   Jong Hyon Kim
      April 14, 2017
      Page 4

surgery.

On September 15, 2016, Dr. Scilaris performed right shoulder surgery at Health East Ambulatory Surgical Center.  He performed right shoulder arthroscopy, arthroscopic debridement and repair of a partial-thickness subscapularis rotator cuff tear, debridement of a partial-thickness anterior superior labral tear, and subacromial decompression and bursectomy.

On October 20, 2016, Dr. Adin reviewed electrodiagnostic studies of the upper and lower extremities performed on September 28, 2015 by Dr. Yong Tak.  The EMG studies demonstrated evidence consistent with a left C6 radiculopathy and right S1 radiculopathy.  Dr. Adin recommended a cervical discography of C3-C4 through C6-C7.

On November 2, 2016, Dr. Adin performed a cervical discography from C3-C4 to C6-C7 at Health East Ambulatory Surgical Center.   The discography demonstrated non-typical neck pain at C3-C4 with evidence of contrast extending into the outer annulus, and at levels C4-C5, C5-C6, and C6-C7 there was concordant neck pain with evidence of contrast extending to the outer annulus.

On January 16, 2017, the claimant saw Dr. Sebastian Lattuga for neck pain with radiation into the bilateral lower extremities.  I assume this is an error and he meant upper extremities.  There was numbness, tingling, and dysesthesias.  The rest of the examination was not present.  Dr. Lattuga recommended physical therapy.

On January 26, 2017, Dr. Sebastian Lattuga performed surgery on the cervical spine at NYP-Lower Manhattan.  Dr. Lattuga performed an arthrodesis at C4-C5 and C5-C6, a cervical hemivertebrectomy at C4, C5, and C6, a discectomy at C4, C5, and C6, and intervertebral implant and anterior instrumentation at C4, C5, and C6.

**EXAMINATION:**

At your request, I performed an Independent Medical Examination on the claimant, Jong-Hyon Kim, in my Manhattan office on 04/06/2017. The claimant was accompanied by a translator by the name of Mariana.

The claimant reported being a 61-year-old male who was involved in an accident on 08/08/2015. He stated that he was the seat belted driver of a taxi that was rear-ended. Minimal damage was noted to the vehicle. His initial complaints according to the claimant today were neck pain, low back pain, and right shoulder pain. He did not seek immediate medical attention. Two days later, he

RE:   Jong Hyon Kim
      April 14, 2017
      Page 5

went to a clinic. He ultimately, went on to have physical therapy which he has now finished. He has also had multiple MRIs and has had two injections to his lumbar spine.

The claimant reports of having had neck surgery as well as right shoulder arthroscopy. He currently takes no medication for any problems related to the subject accident. He denies any history of prior injuries to the above areas or to subsequent injuries to the above areas. More information will be available from the deposition.

Present complaints are neck pain, low back pain, and right shoulder stiffness.

At the time of the injury, the claimant was employed as a taxi driver. He missed approximately two weeks of work and continues to work in that same capacity.

On physical examination, the claimant stands 5 feet 8 inches tall, weighs 144 pounds and demonstrates a normal gait.

Cervical spine exam was completely normal and showed flexion to 45 degrees, extension to 40 degrees, left and right rotation of 80 degrees. There was no paraspinal tenderness or spasm. No midline bony tenderness. No trapezial tenderness. The cervical spine demonstrated a normal lordotic curve. There was a healed anterior incision in his neck.

Thoracolumbar spine was completely normal and showed full flexion to 90 degrees, extension to 20 degrees. No paraspinal tenderness or spasms present. No midline bony tenderness is present. There was overall normal alignment of the spine. The patient was able to heel and toe walk without difficulty and squat without difficulty. Straight leg raise was negative bilaterally.

Shoulder examination was completely normal and showed forward elevation bilaterally to 180 degrees, internal rotation bilaterally to 55 degrees, external rotation bilaterally to 45 degrees. Abduction was full bilaterally at 180 degrees. Negative apprehension. Negative impingement. Right shoulder internal rotation was 45 and left was 55. There were well-healed portals about the right shoulder.

Neurologic examination showed motor and sensory to be 5/5 in all groups and reflexes are 2+ and symmetric.

**IMPRESSION:**

I have reviewed the medical records made available to me and performed an

RE:   Jong Hyon Kim
      April 14, 2017
      Page 6

examination on the claimant; based on the claimant's subjective complaints and history alone, it is my opinion that Mr. Kim suffered nothing more than minor, self-limited, soft tissue injuries to the cervical and lumbar spine and right shoulder as a result of the subject motor vehicle accident on August 8, 2015. These types of soft tissue injuries are known to biologically resolve within a 4-to 6-week timeframe with a short course of anti-inflammatory medication and physical therapy and/or chiropractic care. At that time, the claimant returned to his pre-accident status of musculoskeletal health without any residual complaints. Any ongoing issues beyond that timeframe are completely unrelated to the incident in question.

Based on the enclosed medical documentation, the claimant did not go to the hospital after the accident. In fact, it appears that the claimant did not seek medical attention until two days after the incident in question at which time he sought care from Dr. Chin, a chiropractor. Had the claimant sustained any significant type of trauma, he would have had the immediate onset of pain and swelling which most certainly would have caused him to seek immediate medical attention. Obviously, given the delay in seeking treatment, the claimant sustained no significant injury to the cervical and lumbar spine and right shoulder beyond mild soft tissue trauma. It is well understood that an acute disc injury or spinous ligament injury would cause immediate and incapacitating pain that would be impossible to ignore. This was clearly not the case here.

The MRI of the cervical and lumbar spine and right shoulder did demonstrate pathological findings, but none of these findings were acute in nature and therefore, were not causally related to the subject accident. The findings on the MRI of the cervical and lumbar spine and right shoulder are typical of a 60-year-old male and are the result of age-related wear and tear. The multiple advanced studies that were performed on the cervical and lumbar spine demonstrated no examination findings that were causally related to the subject accident.

The surgeries that were performed to the cervical spine and right shoulder were related to pre-existing degenerative and age-related changes, and were in no way causally related to the subject accident. The indications for surgery are equally unclear owing to at least one report indicating "atypical pain", an indication that the subject complaints of pain were not correlated with objective findings.

The claimant was also involved in a subsequent motor vehicle accident on February 8, 2016 which was only noted in the deposition. The surgery to the cervical spine and right shoulder could have been causally related to the subsequent motor vehicle accident as it predated the date of the cervical spine and right shoulder surgery. No medical records were provided regarding this

RE:   Jong Hyon Kim
      April 14, 2017
      Page 7

motor vehicle accident nor was there any reference of the accident in the medical documentation that was submitted for my review.  It appears that the claimant never mentioned this accident to his treating physicians specifically his surgeon Dr. Adin. This omission in the history reported to the treating doctor calls into question patient sincerity.

It should be noted that nowhere in this medical record was there any objective evidence of change in this claimant's musculoskeletal anatomy as it relates to the subject accident.  Such changes would have to be present in order to assign a permanent partial impairment.  My physical examination revealed no ongoing issues with any of the areas in question.  The sole finding in this case was the claimant's ongoing subjective complaints of pain without any clinical correlation.

**SUMMARY:**

The claimant suffered at most minor, self-limited soft tissue injuries to the cervical and lumbar spine and right shoulder as a result of the motor vehicle accident on August 8, 2015.  These complaints resolved within just a 4-to 6-week timeframe with conservative management thereby returning the claimant to his pre-accident status of musculoskeletal health.  The surgeries that were performed on the cervical spine and right shoulder are in no way causally related to the subject accident.  There is no permanent partial impairment to the claimant's musculoskeletal anatomy as it relates to the accident on August 8, 2015.

Should you have any further questions, please do not hesitate to contact my office.

*"I, Andrew Bazos, M.D. being duly licensed to (NY State license #176339) practice Medicine in the State of New York, declare, under the penalties of perjury, that the information contained within this document was prepared and is the work product of the undersigned, and is true to the best of my knowledge and information."*

Sincerely,

Andrew Bazos, M.D.

kg-pb

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

JONG HYON KIM,

                                Plaintiff,

           - against -

WISE COACHES, INC. and TERRY SWANN,

                             Defendants.

------------------------------------------------------------------x

Civil Action No.:
16-CV-1980

**SUPPLEMENTAL FRCP
RULE 26 EXPERT
DISCLOSURE OF DR.
ANDREW N. BAZOS**

      **PLEASE TAKE NOTICE** that Defendants/Third Party Plaintiffs WISE COACHES,

INC. and TERRY SWANN (hereinafter "Defendants") by their attorneys, GALLO VITUCCI

KLAR, LLP, provide the following disclosure of the medical expert who will testify on Defendants

behalf at the trial:

      1.    Dr. Bazos' Supplemental report concerning his opinions and anticipated testimony

is annexed hereto as **Exhibit "A."**

      Defendants reserve the right to supplement this report prior to trial.

Dated: New York, New York
       July 18, 2017

                         Respectfully submitted,

                         GALLO VITUCCI KLAR LLP

            BY:          _____

                         Bryan Schwartz
                         *Attorneys for Defendants*
                         90 Broad Street, 3rd Floor
                         New York, New York 10004
                         (212) 683-7100
                         Our File No.: NI 2015-7

TO:
      ROBERT ALAN SAASTO ESQ.
      *Attorneys for Plaintiff*
      JONG HYON KIM
      41 Eagle Chase
      Woodbury NY 11797
      631 223 1780

EXHIBIT A

## Sports & Entertainment Physicians, P.C.

### Andrew N. Bazos, M.D.
#### Diplomate, American Board of Orthopedic Surgery

July 16, 2017

Bryan T. Schwartz, Esq.
Gallo Vitucci & Klar, LLP
90 Broad St.
New York, NY 10004

**CLAIMANT:**                          Jong Hyon Kim

### INDEPENDENT MEDICAL RECORD REVIEW - ADDENDUM

Dear Attorney Schwartz:

**PURPOSE:**

At your request, I have performed an addendum to an independent medical record review and examination regarding the claimant, Jong Hyon Kim, and injuries he allegedly sustained as the result of a motor vehicle accident, which occurred on August 8, 2015.

**REVIEW OF MEDICAL RECORDS:** In forming my opinions, I relied upon the following medical records:

1. Operative report regarding cervical epidural cortisone injection performed on April 14, 2016 at Montvale Surgical Center.
2. Operative report regarding epidural cortisone injection performed at C7-T1 on May 12, 2016 at Montvale Surgical Center.
3. MRI of the left shoulder dated March 9, 2016 by Fast Care Medical Diagnostics, PLLC indicating diffuse tendonitis involving the supraspinatus and infraspinatus tendons.
4. MRI of the thoracic spine dated March 9, 2016 from Fast Care Medical Diagnostics, PLLC indicating T2-T3 2-mm broad-based left paracentral disc herniation impressing upon the thecal sac; T6-T7 3-mm broad-based right paracentral disc herniation impressing upon the ventral cord.
5. Medical records from Jean Rhee, M.D., multiple dates of service ranging from March 25, 2016 through May 10, 2016.
6. Medical records from Hudson Pain Associate, P.C., multiple dates of service ranging from February 24, 2016 through February 20, 2017.

RE:   Jong Hyon Kim
      June 11, 2017
      Page 2

7. Records from Jonathan Wang Physical Therapy, multiple dates of service ranging from August 19, 2016 through October 18, 2016.
8. Photographs of the involved motor vehicles.
9. MRI of the right shoulder dated September 15, 2016 from Springfield Radiology Imaging, P.C., indicating small amount of joint effusion, which could be posttraumatic in nature; moderate swelling seen involving the acromioclavicular joint associated with inferior bulging of the joint capsule causing pressure effect in the supraspinatus tendon; increased signal intensity noted involving the biceps tendon indicative of biceps tendonitis.
10. MRI of the lumbar spine dated September 22, 2015 by All County, LLC, indicating central herniation at L2-L3 with thecal sac indentation, punctate right paramedian annular tear components; bulging disc at L3-L4 with moderate bilateral foraminal stenosis; bulging disc at L4-L5 with moderate bilateral foraminal stenosis; bulging disc at L5-S1.
11. MRI of the cervical spine dated September 27, 2015 from All County, LLC, indicating central herniation at C3-C4 with cord impingement; central herniation at C4-C5 with cord impingement and mild bilateral foraminal stenosis; central herniation at C5-C6 with inferior extrusion and moderate cord compression; mild bilateral foraminal stenosis; left paracentral herniation at C6-C7.
12. MRI of the cervical spine dated February 27, 2016 from Fast Care Medical Diagnostics, PLLC, indicating C3-C4 annular disc bulge impressing on the ventral cord with mild spinal canal stenosis and bilateral neuroforaminal narrowing, left worse than right; C4-C5 annular disc bulge with uncovertebral spurring impressing upon the ventral cord with mild spinal canal stenosis and bilateral neuroforaminal narrowing; C5-C6 3-mm broad-based central disc herniation within annular disc bulge and uncovertebral spurring impressing upon the ventral cord with mild-to-moderate spinal canal stenosis and bilateral neuroforaminal narrowing; C6-C7 2-mm broad-based left paracentral disc herniation and annular disc bulge impressing on the thecal sac with mild spinal canal stenosis.
13. MRI of the lumbar spine dated February 27, 2016 by Fast Care Medical Diagnostics, PLLC, indicating L2-L3 2-mm broad-based right paracentral disc herniation with focal annular tear, impressing upon the thecal sac with narrowing of the lateral recess; L3-L4 annular disc bulge impressing upon the thecal sac with narrowing of the lateral recess bilaterally and narrowing of the neuroforamina bilaterally; L4-L5 annular disc bulge impressing upon the thecal sac with mild spinal canal stenosis, narrowing of the lateral recess bilaterally, and narrowing of the neuroforamina bilaterally resulting in impingement on the exiting L4 nerve roots bilaterally; no disc bulge, herniation or neuroforaminal canal stenosis at L5-S1.
14. Operative report regarding cervical arthrodesis at C4-C5 and C5-C6; cervical hemivertebrectomy at C4, C5 and C6; discectomy at C4, C5 and C6;

RE:    Jong Hyon Kim
        June 11, 2017
        Page 3

        intervertebral implant; anterior instrumentation C4, C5 and C6 with one hour of fluoroscopy performed by Sebastian Lattuga, M.D.
15. Medical note from Thomas Scilaris, M.D., dated March 20, 2017.
16. Medical note from Sebastian Lattuga, M.D., dated March 27, 2017.
17. Independent medical record review from David Payne, M.D., dated April 27, 2017.
18. Medical note dated June 23, 2016 from David Adin, D.O.
19. MRI of the cervical spine dated February 14, 2017 from White Plains Hospital Center, Department of Ideology indicating C6-C7 bulging disc deforming the thecal sac with mild narrowing of the neuroforamen on the left; C5-C6 on the right at C4-C5 with moderate narrowing of the foramen due to productive changes.
20. CD containing images of x-rays from NY Spine.
21. CD containing images from Springfield Radiology.
22. CD containing images of MRI studies of the cervical spine and lumbar spine from All County, LLC.
23. CD containing records from Fast Care.
24. Report from John T. Rigney, M.D. dated June 16, 2017.


**HISTORY:**

For a detailed review of the medical records provided up to this point, please see my independent medical record review and examination dated April 14, 2017. The additional medical records are quite voluminous and will be summarized here. The subjective motor vehicle accident occurred on August 8, 2015.

On September 22, 2015, the claimant underwent an MRI of the lumbar spine at All County, LLC.  The report describes central herniation at L2-L3 with thecal sac indentation, punctate right paramedian annular tear components; bulging disc at L3-L4 with moderate bilateral foraminal stenosis; bulging disc at L4-L5 with moderate bilateral foraminal stenosis; bulging disc at L5-S1 with mild bilateral foraminal stenosis.

On September 27, 2015, the claimant underwent an MRI of the cervical spine at All County, LLC.  The report describes central herniation with cord impingement at C3-C4, C4-C5, mild bilateral foraminal stenosis C4-C5, central herniation at C5-C6 with inferior extrusion and moderate cord compression, mild bilateral foraminal stenosis with left paracentral herniation at C6-C7 with thecal sac indentation.

Beginning on February 24, 2016, the claimant came under the care of the providers at Hudson Pain Associates, P.C., related to neck pain, lower back pain,

RE: Jong Hyon Kim
June 11, 2017
Page 4

and upper extremity pain as a direct result of the accident on February 8, 2016. The claimant was prescribed additional MRI studies and advised to continue with physical therapy and chiropractic treatment. Dr. Gamburg attributed the claimant's symptoms to the accident on February 8, 2016. The claimant returned to see the providers at Hudson Pain Associates, P.C. on a regular basis through February 20, 2017. The claimant described ongoing severe neck and lower back pain as well as bilateral upper extremity discomfort, which was attributed to the subsequent, unrelated, accident on February 8, 2016.

On February 25, 2016, the claimant came under the care of Jean Rhee, M.D., secondary to a motor vehicle accident that occurred on February 8, 2016. The claimant described acute neck pain, bilateral shoulder pain, and lower back pain, directly attributed to the accident on February 8, 2016. The examination revealed decreased cervical and lumbar ranges of motion with tenderness. There was tenderness upon palpation of each shoulder. Sensory was decreased in the bilateral C5, C6, and L5 dermatomes. Deep tendon reflexes graded at 2+ throughout with the exception of bilateral triceps and biceps graded at 1+. Motor strength testing graded 3/5 throughout the left upper and right upper extremities. The claimant was diagnosed with cervical and lumbar sprain/strain injuries with radiculopathy and acute bilateral shoulder pain, directly attributed to the accident of February 8, 2016. Dr. Rhee ordered MRI studies of the left shoulder, cervical spine, thoracic spine, and lumbar spine. Also, physical therapy, orthopedic consultations, and neurologic consultations were ordered immediately.

On February 27, 2016, an MRI of the cervical spine was obtained at Fast Care Medical Diagnostics, PLLC. Annular disc bulge impressing on the ventral cord with mild spinal canal stenosis and mild bilateral neuroforaminal narrowing was noted at C3-C4, C4-C5, C5-C6, and C6-C7.

On February 27, 2016, an MRI of the lumbar spine was obtained at Fast Care Medical Diagnostics, PLLC. The report describes broad-based right paracentral disc herniation at L2-L3, annular disc bulge impressing on the thecal sac at L3-L4, annular disc bulge impressing on the thecal sac with mild spinal canal stenosis, and resulting impingement of the exiting nerve root at L4 bilaterally.

On March 9, 2016, an MRI of the left shoulder was performed at Fast Care Medical Diagnostics, PLLC. The report describes diffuse tendonitis involving the supraspinatus and infraspinatus tendons.

On March 9, 2016, the claimant underwent an MRI of the thoracic spine at Fast Care Medical Diagnostics, PLLC. The report describes 2-mm broad-based left paracentral disc herniation impressing upon the thecal sac at T2-T3, 3-mm

RE:   Jong Hyon Kim
      June 11, 2017
      Page 5

broad-based right paracentral disc herniation impressing upon the ventral cord at T6-T7.

On April 14, 2016 and May 12, 2016, the claimant underwent epidural cortisone injections to the cervical spine performed at Montvale Surgical Center.

The claimant followed with Dr. Rhee on a regular basis through May 10, 2016. The claimant described ongoing neck, lower back, and bilateral shoulder pain, which was attributed to the accident on February 8, 2016.  The claimant was prescribed ongoing physical therapy and advised to follow up with orthopedists and neurologist.

On June 23, 2016, David Adin, D.O., saw the claimant for a single visit.  The claimant described neck pain radiating into the left upper extremity.  The claimant also described lower back pain.  He concluded the MRI films of February 27, 2016 were essentially unchanged when compared to the MRI on September 22, 2015, of the cervical spine.  He diagnosed the claimant with discogenic neck and lower back pain with radiculopathy.

The claimant underwent an MRI of the right shoulder performed at Springfield Radiology Imaging, P.C on September 15, 2016.  The report describes a small amount of joint effusion, which could be posttraumatic in origin; moderate swelling seen involving the acromioclavicular joint associated with inferior bulging of the joint capsule causing pressure effect on the supraspinatus tendon; increased signal intensity involving the biceps tendon indicative of biceps tendonitis.

On January 26, 2017, Sebastian Lattuga, M.D., performed arthrodesis at C4-C5 and C5-C6; cervical hemivertebrectomy at C4, C5 and C6; discectomy at C4, C5 and C6; intervertebral implant; anterior instrumentation at C4, C5 and C6; fluoroscopy one hour.

On March 20, 2017, the claimant was seen by Thomas Scilaris, M.D., regarding mid back, neck, lower back and right shoulder pain which he attributed to the accident on August 8, 2015. Dr. Scilaris reviewed the treatment provided up to this point.  His examination revealed well-healed healed scars in the anterior cervical spine.  Upper and lower extremity reflexes were symmetric. Cervical and lumbar range of motion was limited with pain and stiffness.  Right shoulder range of motion was limited with pain.  There were healed incisions in the right shoulder.   O'Brien's test was equivocal.   The claimant was diagnosed with multiple injuries to the cervical spine, lumbar spine, and right shoulder status post injection and surgery. Dr. Scilaris concluded that the claimant's injuries are the direct result of the subject accident and resulted in permanent injuries.  He

RE:   Jong Hyon Kim
      June 11, 2017
      Page 6

felt that further treatment of the right shoulder was indicated including cortisone injections.

On March 27, 2017, the claimant saw Sebastian Lattuga, M.D., regarding severe neck and lower back pain, which he attributed to an accident on February 8, 2016, several months after the subject accident.  He diagnosed the claimant with cervical sprain/strain injuries as a result of the second accident and attributed much of the claimant's ongoing complaints to the subject incident on August 8, 2015.  He prescribed physical therapy, a soft collar, and a bone stimulator.

On April 27, 2017, David Payne, M.D., authored an independent medical record review regarding the medical records and radiological examinations.  He concluded that the MRIs of the cervical spine and lumbar spine of February 27, 2016 revealed no interval change from the study of September 22, 2015.  In his opinion, the second accident on February 8, 2016 produced no progression in findings.  The MRI of the thoracic spine on March 9, 2016 revealed herniated discs at multiple levels without appreciable spondylosis.  He felt this indicated the herniated discs were likely of recent origin.  The MRI of the left shoulder obtained on March 9, 2016 revealed tendinosis of the supraspinatus, but could not establish a causal relationship to the original accident on August 8, 2015.

John, T. Rigney, M.D., radiologist, reviewed MRI's of the cervical spine (02/27/2016), thoracic spine (03/09/2016), lumbar spine (02/27/2016) and left shoulder (03/09/2016).  He concluded the subject accident had no overarching impact on the claimant's status in these regions.  None of the findings noted on these studies could in any way be attributed to the incident in question.

**IMPRESSION:**

I have reviewed the additional medical records made available to me in this case and it remains my opinion that Mr. Kim suffered nothing more than minor, self-limited, soft tissue strain injuries to the cervical spine, lumbar spine, and right shoulder as a result of the subject accident on August 8, 2015.  These injuries resolved fully within just a short period of time with conservative management.  The claimant returned to his pre-accident status of musculoskeletal health and without the need for any additional medical treatment.

The MRI's of the cervical spine, lumbar spine and right shoulder that were performed after the subject accident revealed only age-appropriate and degenerative changes in the cervical spine and lumbar spine without any evidence of acute pathology that could be considered causally related to the subject accident.  These findings are typical in a 6-year-old male and represent age-appropriate chronic wear and tear, and not an acute trauma causally related

RE:   Jong Hyon Kim
      June 11, 2017
      Page 7

to the subject accident. Findings such as these are quite common in the general population and typically present with absolutely no clinical correlation or history of recent acute trauma. If anything, the MRI studies only served to confirm that the claimant sustained absolutely no internal derangement injuries as a result of the subject accident.

The additional medical records provided in this case indicate that the claimant experienced a subsequent accident on February 8, 2016 causing severe symptoms in the upper extremities, cervical spine, and lumbar spine. The record shows the claimant's ongoing subjective complaints are the result of this second incident and not the subject accident. The claimant's injuries from the subject incident resolved fully and he returned to his pre-accident status of musculoskeletal health prior to this subsequent accident. All ongoing medical treatment provided to this claimant, beyond the initial few weeks of conservative management after the subject accident is in no way causally related to the incident in question. The claimant's ongoing subjective complaints likely are the result of the subsequent accident on February 8, 2016.

The MRI of the right shoulder performed on September 15, 2015 revealed no internal derangement injuries that were are in any way causally related to the subject accident. There was nothing that reached the threshold requiring invasive medical procedure or ongoing treatment. The issues noted on the MRI represent age-appropriate wear and tear that is chronic and not the result of a recent acute trauma.

Having said all of that, the ongoing medical treatment provided to this claimant only served to address the pre-existing degenerative issues noted throughout the imaging studies coupled with the second trauma on February 8, 2016, which is totally unrelated to the subject accident. This would include the surgery on the claimant's cervical spine performed Dr. by Lattuga, which only served to address the incidental pre-existing degenerative issues noted on the imaging and nothing causally related to a recent trauma itself.

With regard to the report authored by Dr. Scilaris on March 20, 2017, I disagree with his assessment that the claimant requires any ongoing treatment as it relates to the subject accident for his alleged neck, lower back and right shoulder symptoms. Mr. Kim recovered from his accident related injuries within just a few weeks an all ongoing symptoms are the result of pre-existing issues in each area of complaint coupled with his normal daily activities and subsequent trauma.

It must again be emphasized that nowhere in this medical record was there any objective evidence of change in this claimant's musculoskeletal anatomy as it relates to the subject accident. Such changes must be present in order to assign

RE:   Jong Hyon Kim
      June 11, 2017
      Page 8

a permanent partial impairment rating.  The sole finding in this case was the claimant's ongoing subjective complaints of pain without any clinical correlation to the subject accident of August 8, 2015.  As a result, no permanent partial impairment rating can be justified in this case.

**SUMMARY:**

The claimant suffered at most minor, self-limited, soft tissue strain injuries to the cervical spine and lumbar spine and right shoulder as a result of the subject accident on August 8, 2015.  This is based solely on the claimant's subjective complaints and history alone.  The claimant's accident-related injuries resolved fully within just a few weeks thereby returning the claimant to his pre-accident status of musculoskeletal health and without any additional medical treatment. The surgeries performed on the cervical spine and right shoulder are in no way causally related to the subject accident, but instead addressed issues that are pre-existing and degenerative in nature.  The claimant's ongoing subjective complaints of discomfort are likely resulting from the subsequent accident and not the incident in question.  There is no permanent partial impairment to the claimant's musculoskeletal anatomy as a result of the subject incident on August 8, 2015.

Should you have any further questions, please do not hesitate to contact my office.

*"I, Andrew Bazos, M.D. being duly licensed to (NY State license #176339) practice Medicine in the State of New York, declare, under the penalties of perjury, that the information contained within this document was prepared and is the work product of the undersigned, and is true to the best of my knowledge and information."*

*Sincerely,*

Andrew Bazos, M.D.

kg-pb

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                           )    ss.:
COUNTY OF NEW YORK   )

       Melissa Figueroa being duly sworn, deposes and says:

       I am not a party to the action, am over 18 years of age and reside in Westchester County. That on the 19th day of July 2017, I served the within **SUPPLEMENTAL FRCP RULE 26 EXPERT DISCLOSURE OF DR. ANDREW N. BAZOS** on:

ANDREW PARK P.C.
*Attorneys for Plaintiff*
JONG HYON KIM
450 Seventh Avenue, Suite 1805
New York, New York 10123

those being the addresses designated by said attorneys for that purpose, by depositing a true copy of same enclosed in a post-paid properly addressed wrapper in an official depository under the exclusive care and custody of the United States Post Office Department.

                                                   _____
                                            Melissa Figueroa

Sworn to before me this
19th  day of July, 2017

Notary Public

JEANNINE M. DAVANZO
Notary Public, State of New York
No. 02DA6047192
Qualified in Westchester County
Commission Expires August 28, 201_

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                    Civil Action No.: 16-CV-1980

---

JONG HYON KIM,

                              Plaintiff,

          - against -

WISE COACHES, INC. and TERRY SWANN

                              Defendants.

---

## SUPPLEMENTAL FRCP RULE 26 EXPERT DISCLOSURE OF DR. ANDREW N. BAZOS

---

GALLO VITUCCI KLAR LLP
*Attorneys for Defendants*
90 Broad Street, 3rd Floor
New York, New York 10004
Phone: (212) 683-7100
Fax: (212) 683-5555
File No.: NI 2015-7